IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. 1:25-cr-00022-AW-MAL

DANIEL REGINALD HANNA II
  a/k/a "Reggie Hanna"
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America files this sentencing memorandum to provide additional information that is relevant to the sentencing guideline calculation and the § 3553(a) factors.

## BACKGROUND

On August 26, 2025, a federal grand jury in the Northern District of Florida returned an indictment charging the defendant, Daniel Reginald Hanna II, with three counts: (1) attempted distribution of child pornography; (2) receipt of child pornography; and (3) possession of child pornography. ECF No. 1.

On November 18, 2025, pursuant to a plea agreement, Hanna pleaded guilty to counts two (receipt) and three (possession). ECF No. 27. During the change-of-plea hearing, Hanna admitted that he possessed over 2,600 files of child sex abuse material (CSAM) on multiple electronic devices. ECF No. 28 at 2. One of the files was especially horrific in that it depicted a toddler being tortured and raped by an

adult female while the toddler was screaming and crying. *Id.* Hanna also admitted that he had a Dropbox account[1] with a folder named "Kids" that included 163 video files depicting CSAM. *Id.* at 1. However, Hanna expressly and unequivocally denied that he attempted to share one of those videos via Dropbox. *See id.* Prior to the hearing, Hanna also declined to admit relevant conduct regarding his extensive online and sexually graphic communications with minors.

## DISCUSSION

**A. Hanna Distributed Child Pornography on May 23, 2024.**

The Presentence Investigation Report (PSR) includes a 2-level enhancement for distribution of child pornography. PSR ¶ 45; U.S.S.G. § 2G2.2(b)(3)(F). To the extent Hanna maintains that he did not attempt to share child pornography on May 23, 2024 via Dropbox, the government provides the following information in support of the enhancement.

This case originated from a National Center for Missing or Exploited Children (NCMEC) "CyberTip." The tip included a total of 163 CSAM video files. These files were uploaded to Dropbox between December 7, 2014, and October 1, 2015. According to an Excel file provided by Dropbox, the user attempted to share one

---

[1] Dropbox provides cloud storage for file sharing and collaboration among devices and users.

video on May 23, 2024. Upon recognizing the nature of this file, Dropbox closed the account and reported the information to NCMEC.

All the CSAM videos were in a Dropbox folder entitled "Kids." The video that the user attempted to share was "Video Aug 10, 11 05 38 PM.mp4," which is approximately one minute and two seconds in length. The video depicts a pubescent and nude female manually stimulating her vagina and anus.

As indicated in the agreed statement of facts, there is no question that the Dropbox account with the CSAM videos was Hanna's. *See* ECF No. 28 at 1. The email address associated with the Dropbox account was linked to Hanna by name, phone number, address, and cellular device.

There is also no question that Hanna is the individual who attempted to share the CSAM video on May 23, 2024. Dropbox provided two login IP addresses for that date—one associated with Verizon, and one associated with Cox. The Verizon account was linked to Hanna's personal cell phone. The subscriber for the Cox account was Hanna's apartment complex neighbor, who shared an adjoining wall with Hanna at that time. During a post-*Miranda* interview, Hanna admitted that he used his neighbor's Wi-Fi (with her permission) during the relevant timeframe. There were no other login IP addresses from May 23, 2024.

To establish the distribution enhancement under § 2G2.2(b)(3)(F), the government need not prove that another Dropbox user actually received and

downloaded the CSAM video file. *See United States v. Spriggs*, 666 F.3d 1284, 1287 (11th Cir. 2012). "The commentary to the Guidelines defines distribution as 'any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor.'" *Id.* (quoting U.S.S.G. § 2G2.2, Comment 1, Note 1). "The commentary further elaborates that posting illicit images on a publicly accessible website qualifies as distribution." *Id.* The Eleventh Circuit has explained that "[a]llowing files to be accessed on the Internet by placing them in a **file sharing folder** is akin to posting material on a website for public viewing." *Id.* (emphasis added). "When the user knowingly makes the files accessible to others, the distribution is complete." *Id.*

In this case, Hanna knowingly distributed child pornography when he took deliberate action to provide another Dropbox user with access to his CSAM video file. There is no way to inadvertently share a file on the Dropbox platform, or the platform would be negligent in its duties to protect its customers' data. To share a file on Dropbox, the user must input another email address into the "share" function or create a Dropbox link and then distribute it to someone else via email. Either method requires multiple steps and affirmative actions by the user. When Hanna completed either method, he in fact transmitted CSAM through an online file sharing folder, which triggered a "CyberTip" by Dropbox. At a minimum, Hanna took

deliberate actions with the intent to distribute CSAM. Accordingly, a 2-level enhancement for distribution of child pornography is appropriate. *See* U.S.S.G. § 2G2.2(b)(3)(F).

### B. The Guidelines Do Not Accurately Reflect the Serious Nature of the Offense and Hanna's Danger to the Community.

The PSR also explains that Hanna had multiple social media application accounts, such as Snapchat and Tiktok, where Hanna stated he was a minor and was communicating with minors. PSR ¶ 29. Although not discussed in the PSR, *see id.* ¶ 31 n.5, the nature of these conversations is relevant to multiple sentencing factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

Hanna's Snapchat account[2] alone included at least 36 conversations with other users who expressly claimed to be between the ages of 11 and 16. *See* Ex. 1 at 2–3 (Analysis of Snapchat Content).[3] In many of these conversations, Hanna purported

---

[2] The email address associated with this account was the same as Hanna's Dropbox account. The subscriber records also included Hanna's accurate date of birth and phone number.

[3] Based on the nature of the Snapchat search warrant return, the conversations appear in reverse chronological order.

to be between the ages of 13 and 17,[4] requested photographs of the minors, and commented on the minors' appearance. *See id.* In some of these conversations, Hanna also provided a fake name (i.e., "Tanner"). *Id.* at 62, 67, 85, 87.

While communicating with these minors, Hanna regularly introduced sexually explicit topics. The following are a few examples:

In a conversation with "naynay3428," who claimed to be eleven (11) years old, *id.* at 61, Hanna asked, "Wat color r ur panties tonight too I can try n match my boxers to them lol." *Id.* at 65. Later, Hanna asked, "Wanna be a bad girl wit me haha." *Id.* at 63. When the minor confirmed she gets "naughty," Hanna volunteered, "If u ever wanna see my abs or like my dick jus lmk one night." *Id.* at 62–63. Finally, Hanna described how his penis became erect "when u said u can be a bad girl" and then his sister was staring at him while he was changing clothes.[5] *Id.* at 60.

In a conversation with "jazzy_jazz955," who claimed to be fourteen 14 years old, *id.* at 55, Hanna claimed to be 17, *id.* at 57. Hanna asked for "normal" or "half sexy" pictures of her. *Id.* at 55. Hanna discussed his sexual preferences when he is "horny" before bed. *Id.* at 54. Hanna then told the minor that if she were with him, she could help him by providing "head." *Id.* at 53. After the minor implied she would

---

[4] During these conversations, Hanna was in his mid- to late-30s.

[5] In multiple other conversations, Hanna talked about his sister observing him masturbating. Ex. 1 at 4.

do that, Hanna said they would be "perfect" together: "If ur down with that then hell yeah. U got everything a guy wants well at least that I do and ur kinda sexual too. Perfect fit." *Id.* at 51–52.

In a conversation with "lynch6806," who claimed to be eleven (11) years old, Hanna claimed to be 13 and to live in Georgia. *Id.* at 50–51. Hanna agreed to date her if she was "cool" with his age and location. Hanna asked where she lived, but the minor declined to provide that location because her "mom siad [sic] I can't tell no one where I live." *Id.* at 50. Hanna then said they would have to date online. *Id.*

In a conversation with "alia_samar," who claimed to be fourteen (14) years old, *id.* at 39, Hanna and the minor described providing fellatio to each other in sexually graphic terms. *Id.* at 39–40.

In a conversation with "crystalbell9," who claimed to be fourteen (14) years old, Hanna purported to be 17. *Id.* at 18. Hanna conversed with the minor for approximately two years. *Id.* at 24 ("We almost been talking for 2yrs now"). Hanna described being in "trouble" if they were together and how much he wants to "smash." *Id.* at 22. When the minor expressed doubt about her appearance, Hanna explained, "U got a phat ass and nice ass pussy especially when u can see it from ur shorts and jeans and shit." *Id.* at 21. Hanna further stated, "Bruh......u gotta quit that shit least wit me cuz ur fine asf and got a bangin ass body. U in a bra and boyshorts a nigga gon stay ard all night bahahaha." *Id.* at 21. Later, Hanna asked if she provides

fellatio. *Id.* at 18–20. The minor stated, "Idk wat u do lmao," and she has never done that before. *Id.* at 19.

In a conversation with "rileybradfor226," who claimed to be 12 years old, Hanna said he was 16 and "need[s] a gf." *Id.* at 6. The minor then offered to put him in touch with her friend, who was 14 years old ("turning 15"). *Id.* at 6. Hanna asked, "Wat she look like." *Id.* at 5. After the minor sent a picture of her friend, Hanna commented on the size of her breasts: "Mommy milkers… Hers are big not gonna lie."

In a conversation with "yagurlkenzie6," who Hanna believed to be "basically like 15" years old. *Id.* at 45, Hanna regularly commented on her appearance in sexually explicit terms. *See, e.g., id*. Hanna conversed with this minor for over four years. On August 31, 2022, the minor sent a video to Hanna of two minor females sitting on a bed. *Id.* at 2. The minors have hickeys on their necks and are rubbing their breasts in a sexual manner. *Id.* On September 23, 2025, the minor sent a video to Hanna of a minor female holding a cheese stick in her hand and acting like she is performing oral sex on the cheese stick. *Id.*

In a conversation with "luvyouveronika," who claimed to be 12, Hanna stated he was 16. *Id.* at 111. Hanna asked for pictures of the minor and said he wanted to "get to know [her]." *Id.* at 107–08. Hanna also stated, "I've dated a 12yr old before and I got 12 and 13 and 14yr old friends rn." *Id.* at 108.

Again, these are just some examples of Hanna's online communications with minors. There are many more conversations—over 100—where Hanna likely knew from photographs and other conversations[6]  that the other user was a minor but there was not an explicit mention of the user's age in the messages. *See* PSR ¶ 31. These examples are simply intended to demonstrate that Hanna is not merely a passive possessor of child pornography. In addition to maintaining a significant and disturbing collection of CSAM for over a decade, Hanna regularly conversed with minors—sometimes for years—attempting to groom them by introducing them to sexually explicit topics and ideas. Based upon his pervasive sexual interest in children and his willingness to act on that interest by contacting and communicating with minors, Hanna presents a significant danger to the public and should be sentenced accordingly.

Date: March 20, 2026

Respectfully submitted,

JOHN P. HEEKIN
United States Attorney

_____
Adam Hapner
Assistant United States Attorney
Florida Bar No. 112006

---

[6] Hanna begins multiple conversations with users stating that he found them on other social media platforms to include: Yubo, Funimate, TikTok, Yolo, hoop, Dubsmash, and Likee. Ex. 1 at 4.

9

401 SE First Ave, Ste 211
Gainesville, Florida 32601
(352) 378-0996
Adam.Hapner@usdoj.gov